**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| JAY CONNOR,<br><br>         Plaintiff,<br><br>v.<br><br><br>MY DOCTORS LIVE, LLC, et al.,<br><br>         Defendants. | Case No. 2:24-cv-06361-DCN<br><br>**APPEARING DEFENDANTS' JOINT MOTION TO STAY PROCEEDINGS PENDING THE UNITED STATES SUPREME COURT'S DECISION AND INCORPORATED MEMORANDUM OF LAW** |

  Defendants My Doctors Live, LLC and Jorant Wellness LLC ("Jorant") (collectively, the "Appearing Defendants"),[1] jointly move for the Court to enter an order, pursuant to its inherent authority, staying this case pending the United States Supreme Court's consideration of *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, United States Supreme Court Case No. 23-1226. The Supreme Court granted a petition for writ of certiorari to appeal the Ninth Circuit's decision in *True Health Chiropractic, Inc. v. McKesson Corp.*, Nos. 22-15710, 22-15732, 2023 WL 7015279, (9th Cir. Oct. 25, 2023).

  Based on the questions presented, the decision in *McLaughlin Chiropractic* will address whether or not district courts must accept the FCC's legal interpretation of the Telephone Consumer Protection Act ("TCPA") or are free to construe a statute using the ordinary tools of statutory interpretation.

  The Supreme Court is scheduled to hear oral argument on January 21, 2025. Given the Supreme Court's schedule, such a stay would not be expected to be any longer than six months.

---

[1] Defendant (Health and Life Networking LLC) has not yet been served with process in this case.

Defendants also believe that oral argument would be helpful to the disposition of the motion and thus request that the Court set such hearing at its convenience.

## SUMMARY OF REQUESTED RELIEF

Plaintiff Jay Connor has filed a class action lawsuit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, and corresponding South Carolina Telephone Privacy Protection Act ("SCTPA"), S.C. Code § 37-21-10. Specifically, this case is about telephone calls to phone numbers on do-not call lists, which allegedly violated those statutes.

For many years, there have been questions as to whether calls to cell phones (as opposed to landlines) implicate the applicable "do not call" lists. Most of this legal wrangling has concerned whether or not a district court is bound to follow the Federal Communication Commission's ("FCC") statement on this matter that was issued in an order more than twenty years ago, where it stated that cell phones *could* potentially be considered "residential lines," and thus covered by the do not call provisions.

Next week, the Supreme Court will hear oral argument on a case that should answer the question of whether this Article III court is bound to follow the FCC's position. A decision will follow by the end of the Supreme Court term in June 2025. As set forth below, in recent years, there have been several Supreme Court cases involving the TCPA, and district courts frequently stayed proceedings pending the outcome of those cases. Such a stay should be issued here.

## BACKGROUND ON THE HOBBS ACT AND WHAT IS BEFORE THE SUPREME COURT IN *MCLAUGHLIN CHIROPRACTIC*

During the New Deal era, Congress passed and President Truman signed into law the Administrative Orders Review Act of 1950, which has (somewhat confusingly)[2] come to be known

---

[2] This Hobbs Act should not be confused with the more commonly known criminal Hobbs Act, which deals with racketeering, 18 U.S.C. § 1951. The reference to the "Hobbs Act" in this motion pertains only the Administrative Orders Review Act of 1950 found at 28 U.S.C. § 2342.

as the Hobbs Act. 28 U.S.C. § 2342. Generally, the Hobbs Act establishes direct judicial review for certain orders of the FCC and other administrative agencies. 5 U.S.C. § 703.

At the outset, Defendants are mindful of this Court's statements about a decade ago with respect to the Hobbs Act, where this Court noted that if a party sought to have the district court invalidate an exemption to the TCPA promulgated in an FCC order, such "an argument would raise serious issues under the Hobbs Act, which grants the courts of appeals the 'exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of … all final orders of the [FCC].' 28 U.S.C. § 2342(1); 47 U.S.C. § 402. Whichever way it is done, to ask the district court to decide whether the regulations are valid violates the Hobbs Act." *Fitzhenry v. Indep. Ord. of Foresters*, 2015 WL 3711287, at *2 n.2 (D.S.C. June 15, 2015) (Norton, J.) (cleaned-up).

Since this Court's statement on this issue in *Fitzhenry* nearly a decade ago, there has been considerable ink spilled from federal appellate courts on the Hobbs Act.[3]

### WHY THE *MCLAUGHLIN CHIROPRACTIC* DECISION WILL MATTER TO THIS CASE

Critically, this case similarly turns on an interpretation of a TCPA provision and the binding effect of the FCC's legal interpretation of that provision on this Court. The gravamen of Plaintiff's lawsuit is that Defendants violated the TCPA when they made telemarking calls to Plaintiff's cell phone. Plaintiff's Complaint [ECF No. 1] ¶¶ 1-4. The specific TCPA provision Defendants allegedly violated, however, only applies to certain calls made to "residential telephone subscribers." [ECF No. 1.] ¶¶ 57-59; 47 U.S.C. § 227(c).

---

[3] The Supreme Court nearly resolved this issue five years ago in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1, 11 (2019). In a concurring opinion, Justice Kavanaugh, joined with Justices Thomas, Alito, and Gorsuch, stated that he disagreed with the Fourth Circuit that district courts must adhere to the FCC's TCPA interpretations. *Id.* The remaining five justices (two of whom are no longer on the Supreme Court) did not explicitly disagree but instead held that there were preliminary issues that the lower courts should have addressed. *Id.* at 7-8.

As it stands, the FCC interprets "residential subscribers" to encompass "wireless telephone numbers" despite the plain meaning and statutory structure of the TCPA suggesting otherwise. 47 C.F.R. § 64.1200(e) (citing *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14039 (2003)). Because of the Hobbs Act, some courts have adhered to the interpretation, even though the "TCPA clearly draws a distinction between cellular telephones and residential telephones." *Turizo v. Subway Franchisee Advert. Fund Trust Ltd.*, 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022).

Here, a stay appropriately permits the parties and this Court to receive clarification on the binding nature *vel non* of the FCC's 2003 order before spending time and expenses litigating over the proper interpretation for "residential telephone subscribers." Accordingly, this Court should grant the motion to stay.

## BACKGROUND

### A.     The TCPA and Corresponding FCC Regulations

In 1991, under the leadership of its chief congressional sponsor, the Hon. Ernest Hollings, Congress enacted the TCPA in part to regulate telephone solicitations. 47 U.S.C. § 227; *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 614-15 (2020). While there have been thousands of federal court decisions construing the TCPA over the last three decades, at its core the statute can be thought of as doing three main things:

1. Placing restrictions on the use of regulated technology (specifically automatic telephone dialing systems and prerecorded voices) to make telephones calls.

2. Placing restrictions on calls to residential lines of people who do not want to receive calls (either because they placed their number on a national do-not-call list or a company specific do-not-call list).

3. Placing restrictions on unsolicited faxes.[4]

---

[4] 47 U.S.C. §§ 227(b)(1)(A), (B) (restricting the use of regulated technology to make telephone calls); 47 U.S.C. § 227(c) (restricting calls to residential lines that are on a company specific do not call list or a national do not call list); 47 U.S.C. § 227(b)(1)(C) (restricting unsolicited faxes).

4

Congress used different terms for the different sections in the statute. Most critically, the restrictions on automatic telephone dialing systems apply to residential *and* cellular telephone lines whereas the do-not-call provisions *only* apply to residential lines. *Compare* 47 U.S.C. §§ 227(b)(1)(A), (B), *with* 47 U.S.C. § 227(c). Congress specifically prohibited the use of automatic telephone dialing systems to call "cellular telephones" in section 227(b)(1)(A)(iii) and any "residential telephone line" in section 227(b)(1)(B). 47 U.S.C. §§ 227(b)(1)(A), (B).

Congress also authorized the FCC to establish "a single national database" that compiles a "list of telephone numbers of residential subscribers who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(3). Subsequently, the FCC implemented regulations that created a national do not call registry and prohibited any telephone solicitations to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

In 2003 (twelve years after Congress enacted the TCPA) the FCC issued an order that, in relevant part, extended the so called "do-not call" rules to include calls to "wireless telephone numbers." *Id.* § 64.1200(e) (citing *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14039 (2003)). In extending the rule, the FCC reasoned that "the overall intent of the TCPA" supports providing the same protections to wireless and residential subscribers. 18 F.C.C.R. at 14039.

In the intervening two decades, there have been dozens of district court decisions evaluating TCPA claims under section 227(c) that have addressed the question of whether "residential" telephones include wireless telephones.

Admittedly, the majority of those decisions have found that because the Hobbs Act requires courts to adhere to the 2003 order, a district court is left with no discretion and is required to follow

the FCC's determination that "residential" telephones encompass wireless telephones. *Turizo*, 603 F. Supp. 3d at 1340; *Smith v. Truman Rd. Dev., LLC*, 2020 WL 2044730, at *10 (W.D. Mo. Apr. 28, 2020); *Radvansky v. Kendo Holdings, Inc.*, 2024 WL 3811996, at *3-4 (N.D. Ga. Aug. 13, 2024); *Tessu v. AdaptHealth, LLC*, 2023 WL 5337121, at *5 (D. Md. Aug. 17, 2023). However, the decision in *McLaughlin Chiropractic* may change this paradigm.

      B.    *McLaughlin Chiropractic*

The plaintiffs in the *McLaughlin Chiropractic* case brought a putative class action, alleging that the defendants violated the TCPA in part by sending unsolicited advertisements via fax to the plaintiffs' online fax service. *True Health*, 2023 WL 7015279, at *1. The district court determined that only faxes sent to "traditional analog fax machines" violate the TCPA. *Id.* at *2. In reaching that conclusion, the court did not consider the text of the TCPA because it was "bound by" the FCC's declaratory ruling, which interpreted the TCPA to exclude an "online fax service" from the definition of a "telephone facsimile machine." *Id.*; *In re Amerifactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling*, 34 FCC Rcd. 11950, 11950–51 (2019). The Ninth Circuit affirmed the decision because the Hobbs Act forecloses a district court from even considering whether the FCC's interpretation was incorrect. *True Health*, 2023 WL 7015279, at *2.

The petitioner in *McLaughlin Chiropractic* is asserts that the Hobbs Act's exclusive jurisdiction provision does not apply to private actions seeking monetary damages because the Hobbs Act only applies to orders that are the subject of a "proceeding to enjoin, set aside, annul, or suspend any order of the Commission." Brief for Petitioner at 6, *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, No. 23-1226 (U.S. 2024) (quoting 47 U.S.C. § 402(a)). The

6

petitioner's argument stems significantly from Justice Kavanaugh's four-judge concurrence in *PDR Network*. *Id.* at 2; *PDR Network*, 588 U.S. at 11 (Kavanaugh, J., concurring).[5]

Accordingly, in granting the petition in *McLaughlin Chiropractic*, the Supreme Court will address the question of whether the Hobbs Act requires a district court to accept the FCC's legal interpretation of the TCPA. Oral argument in *McLaughlin Chiropractic* is scheduled for January 21, 2025.

### LEGAL ARGUMENT

As demonstrated below, a stay (which will not exceed six months) will promote judicial economy, will not prejudice Plaintiff, and will avoid imposing unnecessary burdens on Defendants.

#### A. Legal Standard for a Motion to Stay

"A trial court has broad discretion to stay all proceedings pending the resolution of independent proceedings elsewhere." *Rice v. Astrue*, 2010 WL 3607474, at *2 (D.S.C. Sept. 9, 2010) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). This discretion stems from a court's inherent power to "control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997). In ruling on a motion to stay, courts must "balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *United States v. Ga. Pac.*, 562 F.2d 294, 296 (4th Cir. 1977).

This Court has identified these various factors to include: "(1) judicial economy, (2) hardship and equity to the moving party if the action is not stayed, and (3) potential prejudice to

---

[5] In *PDR Network*, the petitioners challenged the Fourth Circuit's holding that the district court was bound by the FCC's TCPA interpretation. 588 U.S. at 6. Although a majority of the Supreme Court did not reach the issue, Justice Kavanaugh, joined with three other justices, concluded that the Hobbs Act does not "preclude judicial review of agency legal interpretations in enforcement actions." *Id.* at 27 (Kavanaugh, J., concurring). Thus, parties are free to argue that an FCC's interpretation is incorrect, and district courts are not "bound by the FCC's interpretation." *Id.*

7

the non-moving party." *CKC Props., LLC v. Town of Mount Pleasant, S.C.*, 2024 WL 39067, at *3 (D.S.C. Jan. 3, 2024) (quotation omitted) (Norton, J.).

  **B.**  **Federal Courts Regularly Grant Stays in Similar Circumstances**

The Supreme Court has taken up several TCPA cases in the last decade. One thing that generally follows is that defendants move for stays pending the Supreme Court's decision. And often, courts both within the Fourth Circuit and otherwise have granted stays pending the resolution of binding decisions involving TCPA interpretations.

Appearing Defendants offer the following to illustrate how widespread the concept of granting stays in TCPA cases until the Supreme Court resolves an issue:

- *Timms v. USAA Fed. Sav. Bank*, 2020 WL 12618897, at *17 (D.S.C. Aug. 20, 2020) (Lydon, J.) (staying further litigation pending the Supreme Court's decision in *Facebook, Inc. v. Duguid*, 592 US. 395 (2021), which involved an interpretation of an "automatic telephone dialing system" under the TCPA);

- *Neal v. Wal-Mart Stores, Inc.*, 2020 WL 9173106, at *2 (W.D.N.C. May 19, 2020) (staying proceedings pending the Supreme Court's decision in *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610 (2020), which involved the constitutionality of a TCPA provision that exempts debt collection calls);

- *Boger v. Citrix Sys., Inc.*, 2020 WL 1939702, at *2-3 (D. Md. Apr. 22, 2020) (same);

- *Seefeldt v. Ent. Consulting Int'l, LLC*, 441 F. Supp. 3d 775, 779 (E.D. Mo. 2020) (same);

- *Loftus v. Signpost Inc.*, 464 F. Supp. 3d 524, 528 (S.D.N.Y. 2020) (same);

- *Rogers v. Navient Sols., LLC*, 2020 WL 8269542, at *1-2 (E.D. Va. July 27, 2020) (granting a stay pending the Supreme Court's decision in *Duguid*);

- *Aleisa v. Square, Inc.*, 493 F. Supp. 3d 806, 817 (N.D. Cal. 2020) (same);

- *Creasy v. Charter Commc'ns, Inc.*, 489 F. Supp. 3d 499, 511 (E.D. La. 2020) (same).

Moreover, outside the context of TCPA issues pending before the Supreme Court, this Court and other judges in this district routinely grant stays pending the resolution of independent proceedings. *Regal W. Corp. v. Neeves*, 2022 WL 9467966, at *5-7 (D.S.C. Oct. 14, 2022) (Norton, J.) (granting a stay pending the resolution of separate California proceeding); *CKC Props.*, 2024 WL 39067, at *9 (Norton, J.) (granting a stay pending the resolution of a South Carolina state court proceeding); *Xodus Med. Inc. v. Mullen*, 2022 WL 593955, at *1-4 (D.S.C. Feb. 28, 2022) (Coggins Jr., J.) (granting a stay pending the resolution of a patent infringement claim against the same defendant in another jurisdiction); *Career Counseling, Inc. v. Amerifactors Fin. Grp., LLC*, No. 3:16-cv-03013, ECF No. 88 (D.S.C. Sept. 28, 2018) (in a TCPA case "granting a temporary stay of this matter for six (6) months to provide an opportunity for the FCC to address Defendant's petition") (Childs, J.).

Accordingly, this Court should stay proceedings pending the resolution of *McLaughlin Chiropractic*.

**C.    A Stay Promotes Judicial Economy by Streamlining the Issues**

This Court should grant the stay because the Supreme Court's decision in *McLaughlin Chiropractic* could significantly impact Plaintiff's TCPA claim or at the very least resolve a critical issue in this case. It is well settled that "where the Supreme Court may shortly provide definitive guidance on key legal questions that could impact the viability of some or all of the claims . . . considerations of judicial economy strongly counsel in favor of a stay." *Int'l Refugee Assistance Project v. Trump*, 323 F. Supp. 3d 726, 734 (D. Md. 2018); *see, e.g.*, *Hickey v. Baxter*, 833 F.2d 1005, 1005 (4th Cir. 1987) (concluding that the "district court acted within its discretion in staying proceedings while awaiting guidance from the Supreme Court in a case that could decide relevant

9

issues"); *Timms*, 2020 WL 12618897, at *17 ("In light of the grant of certiorari in *Duguid*, the court is exercising its inherent authority to stay further litigation of the TCPA claims pending the outcome of that case.").

The *McLaughlin Chiropractic* decision will functionally determine whether this Court is bound by the FCC's statutory interpretation that "residential telephone subscribers" include "wireless telephone numbers." That decision is significant because Plaintiff's TCPA claim considerably rests on the FCC's interpretation, given that most courts have reluctantly accepted the interpretation under the impression that it was binding and courts lacked jurisdiction to review it.[6] *Radvansky*, 2024 WL 3811996, at *3-4; *Turizo*, 603 F. Supp. 3d at 1340.

### D.   If the Hobbs Act Does Not Bind the Court to Follow the FCC's 2003 Order with Respect to Whether Wireless Telephones are Residential Lines, Defendants Will Have Strong Arguments that Wireless Telephones Can Not Be the Basis of a 227(c) Claim

At the outset, Appearing Defendants note that this is not vehicle through which they are asking the Court to decide whether wireless telephones can be residential lines under 227(c). Rather, the points that follow can be thought of as a preview of the argument that Appearing Defendants will present if the Supreme Court rules in *McLaughlin Chiropractic* that the Hobbs Act does not bind the district court to follow the FCC's interpretation on the question.

And on this point, the decision issued by Judge Rodolfo A. Ruiz of the Southern District of Florida in *Turizo* is perhaps the best summary of (1) why the statutory language of the TCPA makes clear on its face that do-not call rules should not apply to cell phones, and (2) also why a

---

[6] The Supreme Court's decision in *McLaughlin Chiropractic* presumably will also impact Plaintiff's SCTPA claim because section 37-21-70(b) prohibits telephone solicitations to telephone numbers on the national do not call registry "maintained by the federal government." S.C. Code § 37-21-10(b). If the Court (released from the constraints of the Hobbs Act) ultimately rules that the TCPA's do not call registry does not apply to cell phones, it logically follows that a claim under the SCTPA cannot be premised on a call to phone number that was not eligible for inclusion on a do not call registry maintained by the federal government.

10

district court is hamstrung by the Hobbs Act from actually applying the plain meaning of the statute and (3) instead must countenance the FCC's "unauthorized expansion of the private right of action for violations of the TCPA's do-not-call provision." *Turizo*, 603 F. Supp. 3d at 1342.

Judge Ruiz emphasized that the "TCPA clearly draws a distinction between cellular telephones and residential telephones." *Id.*, at 1340. "Considering Congress knew of cellular telephones—and in fact referenced cellular telephones as distinct from residential telephones throughout the TCPA—a proper interpretation of the statute would conclude that Congress intentionally omitted any reference to cellular telephones in section 227(c)." *Id.*; *compare* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting certain prerecorded calls to "any residential telephone line"), *with* 47 U.S.C. § 227(b)(1)(B) (prohibiting the same prerecorded calls to "any residential telephone line"). Even the FCC in its 2003 order "acknowledge[ed] Congress's different uses of 'residential' and 'cellular' in the text of the statute" but nonetheless extended the protections to cellular telephone users. *Turizo*, 603 F. Supp. 3d at 1341.

Appearing Defendants also call attention to the Ninth Circuit's decision in *Chennette v. Porch.com, Inc.*, 50 F.4th 1217 (9th Cir. 2022), where it addressed the issue of whether a cell phone used for both business and personal purposes can constitute a "residential" phone under the TCPA. Consistent with the courts that have ruled that Article III courts are bound, under the Hobbs Act, to follow the FCC, in the majority opinion, the court concluded that a cell phone used for both purposes can be "residential" based significantly on the FCC's 2003 order stating that a cell phone registered on the do not call registry is presumptively "residential." *Id.* at 1224.

11

Nonetheless, the dissent issued by Judge Sandra Ikuta[7] is instructive as to a potential post-*McLaughlin Chiropractic* landscape on the relevant issue. Specifically, in interpreting "residential telephone subscribers" under section 227(c), Judge Ikuta noted that

> At the time Congress enacted the TCPA, the most applicable dictionary definition for "residence" was "[a] house where one's home is; a dwelling house." *Residence, Black's Law Dictionary, Sixth Edition* (1990). The dictionary defines the word "residential" to mean "of, relating to, or connected with residence or residences." *Residential, Webster's Third New International Dictionary* (1981).

*Id.* at 1233 (Ikuta, J., dissenting). Thus, a "cellphone, which is mobile and not connected to a house, fixed abode, or dwelling, is not 'residential' under the definitions provided by dictionaries current when the TCPA was enacted." *Id.*

Judge Ikuta also surveyed various publicly available resources and noted that it was commonly "understood that a 'residential telephone' referred to a land line at a residence." *Id.* On this point, Judge Ikuta explained that "installation guides at the time assumed residential telephones were wired telephones." *Id.* n.1 (citing Robert W. Wood, *Home Electrical Wiring Made Easy: Common Projects and Repairs* 143 (1988) (referring to "[v]oltages powering a residential telephone service"); James L. Kittle, *Mastering Household Electrical Wiring* 278 (1988) (referring to "residential telephone wiring systems"); *Local Area Network Magazine: LAN 1990-06:* 5 UBM LLC 147 (6th Issue 1990) (commenting on the lacking "quality of most residential telephone wires")).

Judge Ikuta further noted that the "understanding that residential phones were land lines and distinct from wireless phones persisted for years after the enactment of the TCPA." *Id.*, (citing

---

[7] Judge Ikuta also stated that the court should not be bound by the Hobbs Act because using a cell phone used in part for business purposes is too far removed from a "residential telephone." *Id.* at 1239 (Ikuta, J. dissenting). Appearing Defendants are not pointing to Judge Ikuta's analysis on whether the Hobbs Act should control but instead offer it to demonstrate a path that could (and should) be taken if so-called Hobbs Act deference is gutted in *McLaughlin Chiropractic*.

12

Crain Communications, Inc., Electronic Media 1996-04-29: Vol. 15 Issue 18, 28 (1996) (distinguishing "the lucrative $45 billion wired residential telephone business" from the "$17 billion wireless telephone business"); R&D Magazine 1996-11: Vol. 38 Issue 12 (1996) (referring to "residential telephone wiring"); and James T. Geier, Network reengineering: the new technical imperative, 158 (1996) (referring to "current residential telephone wiring")).[8]

Accordingly, based on the text and the FCC's order, wireless telephones are only protected if "they are used 'in their homes' and 'in the same manner in which individuals use their residential wireline phones.'" *Id.* at 1238 (Ikuta, J., dissenting).

Judge Ikuta's reasoning on this point is consistent with the principle, recognized by the Fourth Circuit, that when a court endeavors to determine the meaning of an undefined term in a statute, the key inquiry is what was the ordinary meaning of the statutory "term[] at the time of its enactment." *Williams v. Kincaid*, 45 F.4th 759, 766–67 (4th Cir. 2022) (quoting *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 675 (2020)); *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018) (highlighting that a court's "job is to interpret the words consistent with their ordinary meaning at the time Congress enacted the statute.") (cleaned-up).

In the event that the Supreme Court unbuckles the handcuffs that the interpretations of the Hobbs Act have placed on district courts, this Court will be free to follow the well-reasoned, plain statutory analyses, that Judge Ruiz offered in *Turizo* and Judge Ikuta offered in *Chennette*, amongst

---

[8] Judge Ikuta's survey of how the term "residential" was used with respect to telephones in the few years before and after the TCPA was enacted in 1991 is consistent with the Fourth Circuit's repeated reliance on "corpus linguistics [which] allows lawyers or judges to search online databases that contain words and phrases within a specific population during a given time period. The uses can then be reviewed one by one, in their context, to determine the meaning of a word or phrase. And when the uses are reviewed as a whole, a broad picture of how a word or phrase was customarily used and understood during a specific time period can emerge."); *United States v. Rice*, 36 F.4th 578, 583 n. 6 (4th Cir. 2022); *United States v. Robinson*, 92 F.4th 531, 538 (4th Cir. 2024) (describing corpus linguistics as "[a]n emerging tool of statutory construction" that involves searching a database of written work to see how a word or phrase is used").

others.[9] Appearing Defendants submit that, absent the Hobbs Act, these analyses clearly should control. Accordingly, the Court should stay proceedings pending the resolution of *McLaughlin Chiropractic*.

Additionally, given that the Supreme Court granted certiorari on the Hobbs Act issue less than six years after narrowly resolving it in *PDR Network*, it is a legitimate possibility that the Supreme Court will adopt Justice Kavanaugh's position that courts are not bound by the FCC's TCPA interpretations. Consequently, it is likely that this Court can freely apply the statutory tools of construction, which favor the conclusion that cell phone users are not "residential telephone subscribers" under section 227(c). Thus, Appearing Defendants should have an opportunity to assert the defense following *McLaughlin Chiropractic*.

### E.    A Stay Will Not Prejudice Plaintiff

This Court should grant the motion because a relatively short stay will not prejudice Plaintiff. In *McLaughlin Chiropractic*, the Supreme Court granted certiorari in early October. Notably, the court in *Timms*, a month after the Supreme Court granted certiorari in a case involving an interpretation of the TCPA, granted a stay pending the Supreme Court's decision. *Timms*, 2020 WL 12618897, at *16-17. Still, the *Timms* court determined that "there would be no damage, hardship or inequity from the granting of a stay." *Id*.

Similarly, in *Stewart v. T-Mobile, USA, Inc.*, the court granted a defendant's motion to stay pending the FCC's resolution of petitions concerning an interpretation of a TCPA provision. 2014 WL 12614418, at *5 (D.S.C. Oct. 8, 2014) (Duffy, J.). In granting the motion, the court emphasized

---

[9] *See, e.g.*, *Cunningham v. Sunshine Consulting Grp., LLC*, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018) (dismissing claim under DNC Provision alleging communications to cellular phone); *Gaker v. Q3M Insur. Solutions*, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 7, 2023) (same); *Cunningham v. Politi*, 2019 WL 2519702, at *4 (E.D. Tex. Apr. 26, 2019) (same).

that the case was in its "initial stage" and that the plaintiff failed to "articulate any such risk of prejudice to her case." *Id.*

Even in *Neal*, where the case had "already been subject to significant delays," the court granted a stay pending a Supreme Court decision that would clarify a definition under the TCPA. 2020 WL 9173106, at *2. Despite also acknowledging that the pending decision "may have little, if any, impact" on the case, the court nonetheless granted the stay because "any inconvenience or prejudice caused by waiting for a ruling in *Barr* is outweighed by the possibility that the outcome of that case might have an impact … ." *Id.*

Here, with oral argument set in *McLaughlin Chiropractic* for next week, the relatively short stay will not prejudice Plaintiff. Akin to *Stewart*, Plaintiff cannot show any risk of prejudice because this case is in the "initial stage," as he recently filed his complaint in November. Nor can Plaintiff allege prejudice due to significant delays as in *Neal*. Therefore, a stay is appropriate because it will not prejudice Plaintiff.

**F.      Without a Stay, Defendants Will Suffer Unnecessary Litigation Expenses**

The Court should grant the stay because Appearing Defendants will suffer unnecessary expenses litigating issues that will likely become moot following *McLaughlin Chiropractic*. This Court has recognized that litigation expenses constitute a sufficient burden to justify a stay pending resolution of an independent proceeding. *Regal*, 2022 WL 9467966, at *5. In *Regal*, this Court granted a stay pending the resolution of a separate proceeding because the proceeding would likely resolve some of the same issues in the case. *Id.* at *6-7. Thus, even though the defendant was not a party to the other action, if the Court denies the motion, the defendant will likely incur "unnecessary" costs litigating issues that the independent proceeding would soon resolve. *Id.*

In the absence of a stay, the major issue is whether Plaintiff's cell phone, used for personal and business purposes, constitutes a "residential telephone" under section 227(c). The test the majority opinion laid out in *Chennette* is a good starting point on the issues on which discovery would be needed. That test is as follows:

(1) how plaintiffs hold their phone numbers out to the public;

(2) whether plaintiffs' phones are registered with the telephone company as residential or business lines;

(3) how much plaintiffs use their phones for business or employment;

(4) who pays for the phone bills; and

(5) other factors bearing on how a reasonable observer would view the phone line.

*See Chennette*, 50 F.4th at 1226.

All of these factors would require meaningful discovery. The first factor—how plaintiffs hold their phone numbers out to the public—will require substantial discovery to the Plaintiff and other public sources. The second factor—whether plaintiffs' phones are registered with the telephone company as residential or business lines—will require discovery to the third-party telephones companies. And this will likely include a need for deposition testimony, as the answer to that question is not straightforward. The third factor—how much plaintiffs use their phones for business or employment—is probably the most significant and the discovery on this is typically very time consuming. This process requires first sending subpoenas to Plaintiff's telephone provider, and then conducting discovery (typically through an expert witness) to determine if Plaintiff is primarily using the phone for personal use. Moreover, it tends to be rather expensive, since it requires a good deal of attorney and expert time. The fourth factor—who pays for the phone bills—often includes the need for third-party discovery to banks and employers.

Moreover, this is just relating to the discovery to determine if the named plaintiff's phone is business or residential line. Given that this case has been filed as a class action, within the next six months the parties would have to focus considerable effort as to whether these questions could be answered on a class wide basis in a manner consistent with Federal Rule of Civil Procedure 23.

In all, Appearing Defendants will be required to expend significant resources and time conducting discovery on this fact intensive issue. And with discovery closing in early October, Appearing Defendants will have to complete this extensive discovery within that time frame. The discovery, however, will be rendered meaningless if the Supreme Court concludes that courts are not bound to follow the FCC's interpretations, and this Court adopts Appearing Defendants' position that section 227(c) does not protect cellular telephones. Accordingly, the Court should stay proceedings.

## CONCLUSION

For the reasons set forth herein, the Court should grant the motion to stay pending the Supreme Court's decision in *McLaughlin Chiropractic*.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to D.S.C. L.R. 7.02, the undersigned counsel certifies that Aaron S. Weiss, on behalf of all Appearing Defendants, personally conferred by telephone in good faith with counsel for Plaintiff concerning the substance of this motion, and that Plaintiff opposes the motion.

[signature page to follow]

| | |
|---|---|
| Respectfully submitted,<br>*My Doctors Live, LLC*<br>By Its Attorneys<br><br>*/s/ E. Bart Daniel*<br>E. Bart Daniel<br>SC State Bar Number<br>USDC DSC ID Number 403<br>Nelson Mullins, LLP<br>151 Meeting Street, Ste. 600<br>Charleston, South Carolina 29401<br>Telephone: 843-534-4123<br>Email: bart.daniel@nelsonmullins.com<br><br>Aaron S. Weiss<br>Pro Hac Vice (Florida Bar # 48813)<br>Carlton Fields, P.A.<br>700 N.W. 1st Avenue, Ste. 1200<br>Miami, Florida 33136<br>Telephone: 305-530-0050<br>Email: aweiss@carltonfields.com<br><br>Adam P. Schwartz<br>Pro Hac Vice (Florida Bar # 83178)<br>Carlton Fields, P.A.<br>P.O. Box 3239<br>Tampa, Florida 33601-3239<br>Telephone: 813-223-7000<br>Facsimile: 813-229-4133<br>Email: aschwartz@carltonfields.com | Respectfully submitted,<br>*Jorant Wellness LLC*<br>By Its Attorneys<br><br>*/s/ J. Alexander S. Barrett*<br>J. Alexander S. Barrett, Esq.<br>SC State Bar Number 6508<br>USDC DSC ID Number 13864<br>Offit Kurman, P.A.<br>300 N. Greene Street, Suite 200<br>Greensboro, North Carolina 27401<br>Telephone: 336-232-0650<br>Email: alex.barrett@offitkurman.com<br><br>Daniel J. Schneider<br>Pro Hac Vice (N.Y. Bar #: 4377255)<br>Offit Kurman, P.A.<br>590 Madison Avenue, 6th Floor<br>New York, New York 10022<br>Telephone: 212-545-1900<br>Email: daniel.schneider@offitkurman.com |

Charleston, South Carolina

January 13, 2025